MANUEL DEL RUBIO, Respondent, *v.* FRANCISCO DUCHESNE et al., Appellants, et al., Defendants.

First Department, May 11, 1954.

*Edward Nathan* of counsel (*Irving E. Fromer,* attorney), for appellants.

*Henry L. Redner* of counsel (*Ader & Smith,* attorneys), for respondent.

BERGAN, J. The complaint is in the usual form for the foreclosure of a purchase-money mortgage which plaintiff holds as assignee. The defendants Calvente, who were the mortgagors, and the defendant Duchesne, their grantee now in possession, assert that the mortgage is usurious and unenforcible. The court at Special Term was of opinion that usury is no answer to the foreclosure of a purchase-money mortgage and plaintiff has had summary judgment.

A purchase-money mortgage is, of course, a closely integral part of a bargain and sale transaction in passing real property. It is not legally objectionable for a man to pay too much for property; and it is not objectionable when he does pay too much to give the excessive consideration in the form of a mortgage rather than in cash. This may be hard dealing but it is not usury. The seller may also properly demand and get a higher price for his property because part of the price will be paid by a mortgage. This, too, may not be usury even though the higher price reflects itself in the amount of the very mortgage given.

There are circumstances, however, when the usual protection afforded to the holders of purchase-money mortgages are utilized as a cloak to cover a truly usurious loan; and if the mortgage becomes unenforcible for usury its invalidity does not disappear because of the legal name it bears.

This would usually involve some separation of the course of bargaining from the making of the loan; and some separation of the true party in interest selling the land from the party loaning the money. It would suggest a device by which the form of a purchase-money mortgage would be used to help a lender of money to obtain a premium on a loan rather than the expression of a better price on a sale.

There are some difficulties inherent in the closely overrunning legal concepts involved and even larger difficulty in the pattern of proof possible, but the case before us seems to illustrate one way in which a purchase-money mortgage might be found to have been usurious.

For the purpose of reviewing the order granting plaintiff's motion for summary judgment of foreclosure we accept as true the factual statements made in defendants' opposing affidavits relating to the purchase of the property and the execution of the mortgage; because defendants are entitled on the motion, and on the appeal from the order against them, to the benefit of the facts they set up in support of their right to a trial under their pleading. In this case there is the additional consideration that the facts as thus set up are not denied by the plaintiff.

The affidavit of the defendant Vincente Calvente shows that for fifty years he was a merchant seaman. Desiring to retire, he became interested in the purchase of a four-story building at 128 East 109th Street, Manhattan, to provide some income. He and his wife could speak English to a " limited extent " but could not read or write it. The owner of the property was Frank Rosado. Mr. Rosado told Mr. and Mrs. Calvente that " the price was $10,000 " but he wanted all cash. " We told him that we were interested, but that we had only $3,000.00 in cash, and that we could not pay all cash."

A real estate broker who was acting in the transaction said " Well, we can get you a mortgage of $7,000.00, and I will ask Mr. Del Rubio, who is here in the office if he wants to give such a mortgage." The " Mr. Del Rubio " referred to is the plaintiff here who sues as assignee of the purchase-money mortgage.

The Calvente affidavit continues that " Mr. Del Rubio agreed to lend us $7,000.00 to complete the transaction, but told us that we would have to pay $11,000.00 in five years." The mortgage was given to Rosado for $11,000. The stamps on the deed indicate a consideration of $14,000.

The mortgage and the deed were executed on April 15, 1948 and recorded April 16th. The assignment of the mortgage from Rosado to plaintiff Del Rubio was executed also on April 15, 1948 and recorded also on April 16th. The deed recited that it was " subject to a purchase money mortgage in the sum of $11,000 to be recorded simultaneously herewith ".

The affidavit of plaintiff Del Rubio on the subject of defendant's claim of usury is circumspect. He does not deny the conversation attributed to him that in lending the Calventes $7,000 he told them that they would " have to pay $11,000.00 in five years."

He merely states that in their pleadings defendants do not deny that plaintiff " had nothing to do with the sale of the premises, the price to be paid on the terms of purchase, etc." This is an argument addressed to a pleading and not a statement of fact; and it is not a denial of the factual statements in the Calvente affidavit. After reciting sundry formal matters the affidavit ends with the plea that plaintiff " purchased the first mortgage simply as a business transaction."

If on the trial it be found as a fact that the $11,000 mortgage did not truly reflect the magnitude of the purchase price, but that it was a device by which plaintiff received an $11,000 mortgage on a loan of $7,000 as part of a transaction in which the

full consideration between seller and buyer was fixed at $10,000, and in which the forms of instruments were used merely to cloak a usurious transaction, the court would be justified in granting appropriate relief to the parties whose legal rights were affected.

The statutory language which, in a somewhat penal tone prohibits usury, cuts through form to reach substance. (General Business Law, § 371.) No person shall " directly or indirectly " it reads, take or receive in money " or things in action, or in any other way " any greater value for " the loan or forbearance " than prescribed in the preceding section.

Devices of some ingenuity, as might have been expected, have been created in avoidance of this language, but when the devices have been seen beneath the color and shape of legal form to be truly usurious in function and purpose, the court has not withheld appropriate relief. (*Grannis* v. *Stevens,* 216 N. Y. 583; *Friend* v. *Friedman,* 126 Misc. 654, affd. 218 App. Div. 797.) The facts considered in *Michaels* v. *Single* (138 Misc. 446) are an example of judicial penetration into a usurious mortgage good in form and appearance.

Essentially the factual issue here will be whether the mortgage transaction was a bargain of price with the named mortgagee, who then sold the land; or whether it was " the loan " made by the plaintiff to which the statutory text applies.

On April 25, 1949, however, defendants Calvente sold the premises to defendant Duchesne. The deed recited that it was " subject to a first mortgage now reduced to $9,800 " making due reference to the place of mortgage recording.

The complaint seeks to foreclose the rights of Duchesne and seeks a deficiency judgment against defendants Calvente who in their answer ask the denial of the relief sought by plaintiff against them on the ground of usury; and on the same ground assert a counterclaim for the recovery of the payments they made on the mortgage. Defendant Duchesne counterclaims on the same ground for the amounts he has paid on the mortgage.

It will be seen on reading the statutory proscription against usury that there is a difference on one hand between a defense to a usurious obligation when its enforcement is sought by the mortgagee or his assignees, and on the other hand an action to get back money that has actually been paid on such an obligation. While section 371 of the General Business Law imposes a disability against usurious loans which has been construed to prevent affirmative recovery upon them, the person who has paid

on such a loan may recover "the amount of money so paid * * * above the rate aforesaid" (§ 372). These distinctions have origin now well over a century ago, and their history and development were carefully examined by Mr. Justice CROPSEY in 1926 in *Yormark* v. *Waldman* (127 Misc. 748). See, also, *Reel* v. *Porcella* (263 App. Div. 621) which passes directly on this point of distinction.

Since the total amount shown to have been paid by all defendants on account of this mortgage does not exceed the rate that would be allowed by law on the amount of the loan as defendants describe it, neither counterclaim is good and each was properly dismissed.

This would leave open to consideration the affirmative relief sought by plaintiff in the foreclosure action. The relief he seeks is twofold. He asks: (1) that any deficiency after sale be charged in the judgment against the Calventes; and (2) that Duchesne's equity of redemption be cut off.

In seeking to protect his equity of redemption against foreclosure on the ground of usury the defendant Duchesne, however, is met with a rule of ratification of the original mortgage implicit in his recognition of the validity of his mortgage by the form in which he took title. The deed to him recited that it was "subject to a first mortgage now reduced to $9,800" duly identified by proper reference as the mortgage here in suit.

It has long been said in New York that the purchaser of land taking the equity of redemption "subject to" a mortgage "cannot question the validity of the prior mortgage on the ground of usury." (Chancellor WALWORTH in 1841 in *Shufelt* v. *Shufelt,* 9 Paige, ch. 137, 145.) The Chancellor was not there dealing directly with this question, but rather with the problem of the validity of notes given to a decedent claimed to have been in consideration of a lottery unauthorized by law and hence invalid, and upon which there was a confession of judgment and later a mortgage issued by the debtor.

But the dictum of the Chancellor, thus turning by way of illustration to the case of ratification of a usurious mortgage by a subsequent grantee taking title subject to it and for which he gave two Massachusetts cases as authority, *Green* v. *Kemp* (13 Mass. 515) and *Bridge* v. *Hubbard* (15 Mass. 103), has become a settled rule in New York and has frequently been cited and followed.

Its development in the Chancellor's thinking may be seen in an earlier statement of the principle the same year in *Post* v.

*Dart* (8 Paige 639) as an illustration in another context where the rights of a judgment creditor of the mortgagor on a usurious mortgage were considered and in which the judgment creditor, unlike the mortgagor's grantee, was regarded as able to rely on the usury to protect the lien of his judgment. The illustrative dictum of the Chancellor there was that the purchaser of the equity of redemption of premises encumbered by a usurious mortgage "who, by the terms of his conveyance, takes the premises subject to the lien and payment of such mortgage, cannot, indeed, set up the defense of usury". (P. 641.)

The question was directly reached and pointedly decided, however, in *Hartley* v. *Harrison* (24 N. Y. 170 [1861]). There land was conveyed subject to a mortgage found to have been usurious. It was held that the defense of usury was not available to the grantee as far as the foreclosure of the equity of redemption was concerned, but the question of the personal liability of the grantee for deficiency was left open. *Shufelt* v. *Shufelt* and *Post* v. *Dart* (*supra*) were cited as authority together with a group of other cases in the same direction including *Cole* v. *Savage* (10 Paige 583, 591).

It has been held, similarly, that the purchaser of the equity of redemption at a foreclosure sale under a junior mortgage subject to the lien of a prior mortgage who is in something like the same situation as the grantee subject to a mortgage, cannot assert the defense of usury against the prior mortgage (*Sands* v. *Church,* 6 N. Y. 347). The language of *Freeman* v. *Auld* (44 N. Y. 50, 53) is strongly expressed and sometimes quoted to the effect that the purchaser taking title subject to a usurious mortgage "is estopped from questioning its validity"; but this, too, is an illustrative example of a legal principle in an opinion, since the mortgage there being considered by the court was not claimed to have been usurious.

We hold, therefore, that the defense of usury is not available to defendant Duchesne as well in respect of that part of the affirmative relief against him sought by the plaintiff to cut off his equity of redemption as of his own counterclaim for the recovery of the amounts paid by him; and that the Special Term correctly granted summary judgment against him.

But the defense of usury is, we think, available to defendants Calvente to the extent plaintiff seeks affirmative judgment against them for a deficiency. There is implicit in some of the decided cases the suggestion that the ratification of a mortgage by the grantee of land taking subject to it also amounts to a

ratification by the mortgagor grantor who gives such a deed subject to it.

But to impress the land that one grants with a lien which a grantee assumes is something quite different from the assumption, independent of the land, of a personal liability which the deficiency judgment would impose. The defense of usury has been called, in another context it is true, a " defense personal to the party known as the borrower " which cannot be transferred as a right to another. (MULLIN, J., in *Bullard* v. *Raynor,* 30 N. Y. 197, 203. See, also, *Post* v. *Dart, supra.*)

This personal status as a borrower is said to be lost on conveyance of the equity of redemption to the extent of depriving him of the right of affirmative relief of cancellation; but he does " not lose the right to assert usury as a defense ". (*Edelman* v. *Cymberg,* 261 App. Div. 698, 699.) The defense of usury there pleaded, however, was not supported by any proof on the trial and judgment of foreclosure was affirmed. There is a discussion of some aspects of the problem in *Brown* v. *Jones* (89 Misc. 538) but no clear holding on the point.

The order and judgment should be modified by affirming so much thereof as grants judgment dismissing each counterclaim and grants judgment foreclosing the interest of defendant Duchesne, and by reversing so much as grants a judgment that would permit a deficiency against defendants Calvente; and the motion in that respect should be denied as against them, the action severed, and their liability for a deficiency determined upon a trial, with costs to plaintiff against defendant Duchesne and, with costs in the case of the Calventes to abide the event.

PECK, P. J., COHN, BREITEL and BOTEIN, JJ., concur.

Judgment and order unanimously modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice.